J. Ronald **JOHNSTON**, Executor of the Estate of Arden Kitchen, etc., et al., Plaintiffs and Appellants,

v.

Linda **STOKER**, Administratrix of the Estate of Dale Stoker, Deceased, et al., Defendants and Respondents.

No. 18612.

Supreme Court of Utah.

July 5, 1984.

---

Ned Good, Pasadena, Ca., H. Hal Visick, Provo, for plaintiffs and appellants.

Ray R. Christensen, Salt Lake City, James Jenkins, Logan, for defendants and respondents.

had been pursued diligently during the moratorium.

HOWE, Justice.

Plaintiff appeals from a summary judgment granted the defendant pursuant to U.C.A., 1953, § 2–1–33, hereinafter Utah Aircraft Guest Statute. Plaintiff is executor of the estate of Dr. Arden Kitchen and of Dottie Kitchen, his wife, and guardian ad litem of Todd Kitchen, Chris Kitchen, and Brad Kitchen, their surviving children. Dr. Kitchen was a one-fourth owner of the aircraft in which he, his wife and two minor daughters were killed. Dale Stoker was the pilot. His estate is administered by defendant Linda Stoker. Plaintiff brought this action for wrongful death, but defendant asserted the affirmative defense of the Aircraft Guest Statute alleging that the plaintiff's action was barred because the Kitchens were guests aboard the aircraft. The trial court agreed and granted defendant summary judgment. Plaintiff appeals challenging the constitutionality of the Aircraft Guest Statute under both the Utah and United States Constitutions.

Utah's Aircraft Guest Statute has been before this Court on only one occasion. Its constitutionality was not challenged at that time. *Middleton v. Cox*, 24 Utah 2d 43, 465 P.2d 530 (1970). Unless a guest's injury is attributable to "willful misconduct" or "intoxication" of the owner or operator, both the Aircraft Guest Statute and the Utah Automobile Guest Statute, U.C.A., 1953, § 41–9–1, et seq., bar recovery by the guest from the owner or operator. Because aircraft and automobile guest statutes are so similar, courts and writers nationwide have analogized the application of aircraft guest statutes to that of the more widely litigated automobile guest statutes. Our treatment of the Automobile Guest Statute in *Malan v. Lewis*, Utah, No. 17606, decided May 1, 1984, gives us guidance in determining the constitutionality of the Aircraft Guest Statute.

## I.  UNIFORM OPERATION

*Malan*, supra, held the Automobile Guest Statute in violation of Utah Const. art. I, § 24, which guarantees uniform operation of the law. Because the Automobile Guest Statute was "so shot-through with exceptions as to be incapable of reasonably furthering the statutory objectives," this Court held that it did not have "uniform operation." Those exceptions were:

(1) Liability insurance requirements allowed non-guests to have a greater recovery than previously.

(2) No-fault insurance requirements allowed a limited remedy for all persons, impliedly superseding a significant part of the Automobile Guest Statute.

(3) The Comparative Negligence Act may nullify a part of the guest statute immunity by allowing a guest to indirectly recover from his host by apportioning fault and liability among joint tortfeasors and establishing a right of contribution among joint tortfeasors according to their respective degrees of fault.

(4) Utah Const. art. XVI, § 5, seems to compel the conclusion that guest statutes are unconstitutional insofar as they purport to bar the heirs of a guest killed as a result of a host's negligence from bringing a wrongful death action.

(5) The Ridesharing Act, U.C.A., 1953, § 54–11–1, contemplates that passengers in both vanpools and carpools are entitled to the ordinary tort remedies for injuries suffered as a result of the negligence of the driver.

(6) The Automobile Guest Statute itself establishes exceptions based on the driver's willful misconduct or intoxication, accidents on private land, legal incapacity to "accept" a ride (e.g., by a minor), joint enterprise of driver and passenger, and payment for the ride.

Additionally, this Court found that a rational relationship between the Automobile Guest Statute and its objectives did not exist. Rewarding hospitality by insulating a host from his lack of ordinary care did not induce automobile drivers to give rides more freely. The argument by the insurance industry that collusive suits were eliminated by the statute lacked basis in fact. Collusion between host and guest made it possible to circumvent the bar of

the statute, just as it made recovery possible before its passage. The lower insurance rates theory simply was not a valid justification for achieving the statutory objective.

In deciding whether the Aircraft Guest Statute is valid under the Utah Constitution we must also determine whether it operates uniformly on the members of the class and whether the classification made by the statute is reasonable in light of the statute's purpose.

As is the case with its sister statute, the Aircraft Guest Statute is also so permeated with exceptions that its uniform application as required under Utah Const. art. I, § 24, must be seriously questioned. Most of the exceptions found to be discriminatory in the Automobile Guest Statute also present difficulties for the Aircraft Guest Statute. They include:

(1) Liability insurance is statutorily required for aircraft which have been granted permits to land on designated county roads. While this is not as broad a coverage as the liability insurance required of automobile drivers, it nevertheless causes many aircraft operators to carry liability insurance, especially those who operate in rural areas.

(2) The Comparative Negligence Act's apportionment of fault and liability and establishment of the right of contribution among joint tortfeasors creates similar exceptions to both statutes.

(3) As in *Malan*, supra, the Aircraft Guest Statute was not challenged on the basis of Utah Const. art. XVI, § 5. However, this constitutional provision seems to compel the conclusion that the Aircraft Guest Statute is unconstitutional insofar as it purports to bar the heirs of a guest killed as a result of the negligence of a pilot, crewman or owner from bringing a wrongful death action against any of them. This is a particularly serious exception in light of the much higher death rate in aircraft accidents.

(4) When analogized to the Automobile Guest Statute, the Aircraft Guest Statute also establishes the same exceptions, including (a) the willful misconduct or the intoxication of the pilot or crewman, (b) the legal incapacity to "accept" a ride, (c) the participation in a joint enterprise with the pilot, crewman or owner, and (d) the payment of the full share of the cost of the ride.

Other factors, unique to travel in small, privately owned aircraft, also cause irregularity in the application of the Aircraft Guest Statute. The high fatality rate in aircraft accidents extremely limits the opportunity for guests to testify of the willful misconduct or intoxication of the pilot or crewman. An aircraft passenger is much less able than an automobile passenger to stop an objectionable ride and get off. Likewise, an aircraft guest, unless experienced in aircraft operation, is less likely to recognize hazardous piloting until it is too late to do anything about it.

While some of these exceptions are not identical to and do not create the same discrimination as in the Automobile Guest Statute, others create greater discrimination. They illustrate the "crazy-quilt" application of the Aircraft Guest Statute. These irregularities in the statute's application cause the statute to discriminate unreasonably and invidiously among aircraft guests in violation of art. I, § 24.

## II. RATIONAL RELATIONSHIP

To pass constitutional strictures, the Aircraft Guest Statute must also bear a rational relation to its objectives. The scant legislative history on the Aircraft Guest Statute fails to reveal the legislature's objectives in enacting it. Writers and courts that have dealt with the subject have equated its objectives with those of the Automobile Guest Statute. *Longnecker v. Noordyk-Mooney, Inc.*, 394 Mich. 696, 232 N.W.2d 654, 655 (1975); *Ayer v. Boyle*, 37 Cal.App.3d 822, 112 Cal.Rptr. 636 (1974); *Messmer v. Ker*, 96 Idaho 75, 524 P.2d 536 (1974); Sanders, Aviation Guest Laws: A Modern Anachronism, 36 J. Air Law and Commerce 185. Two primary goals are generally given as objectives to justify the

classification created by the statute. One is to protect insurance carriers from fraudulent payouts arising out of collusion between the pilot/owner and the passenger. The other is to promote hospitality by preventing ungrateful hitchhikers from suing their hosts. Secondary objectives sometimes given are reduction in insurance rates and a desire to hold back the supposed tide of lawsuits which would be filed by guests in order to prevent them from hampering the administration of justice. Sanders, supra, at 187, 188.

We rule, as did the Idaho Supreme Court in *Messmer v. Ker*, supra, that an analysis of the rejected justifications for the Automobile Guest Statute indicates an even stronger case for declaring the Aircraft Guest Statute unconstitutional. The Aircraft Guest Statute promotes no more hospitality in favor of would-be aircraft hitchhikers than the Automobile Guest Statute did for automobile hitchhikers. Depression era economics may have justified automobile guest statutes when the bulk of them were enacted, but no such necessity exists today to justify them. Just as the promotion of hospitality is too weak a justification to sustain the Automobile Guest Statute, it is a fortiori too weak to sustain the Aircraft Guest Statute because aircraft hitchhiking occurs much less frequently. Id. Indeed, only one other case involving the Aircraft Guest Statute has come to this Court since the statute was enacted in 1953. However, numerous cases have been before this Court based on the Automobile Guest Statute. No case involved a hitchhiker, either in an aircraft or an automobile. The application of the guest statutes has served only to prevent an injured guest from recovering for injuries caused by a friend's or relative's negligence.

An overinclusive classification is created by the Aircraft Guest Statute in its attempt to prevent collusive suits between the host and the injured guest. *Malan*, supra. Parties willing to risk perjury in order to attribute negligence to a pilot or owner to advance a collusive suit are not deterred by the statute. As stated in *Malan*, supra:

The plain fact is that if an injured guest and his host will run the risk of perjury as to the driver's negligence to obtain a recovery from an insurance company, they would just as likely run the risk of perjury as to payment for the ride to obtain a recovery.

Courts would probably have been less clogged with collusive lawsuits than they have been with suits that have forced them to define such terms as "guest," "payment" and "willful misconduct" in attempts to avoid the bar of the guest statutes. Reduction in insurance rates is not a valid reason to single out nonpaying aircraft guests and deny them recovery. Insurance rates are not directly related to the existence of guest statutes. Sanders, supra, at 238.

We do not stand on uncertain ground in ruling that the Aircraft Guest Statute is unconstitutional. As of 1972, there were thirteen states that had aircraft guest statutes. With the current trend of declaring automobile guest statutes unconstitutional, aircraft guest statutes have also faired poorly. Arkansas, Illinois and Nevada have repealed their statutes. In California, Idaho and Michigan, the courts have held them unconstitutional. *Ayer v. Boyle*, supra; *Messmer v. Ker*, supra; *Longnecker v. Noordyk-Mooney, Inc.*, supra. Indiana has amended its statute to foreclose recovery only by the immediate family. Aircraft guest statutes face almost certain death in Ohio, New Mexico and South Carolina where the courts have stricken automobile guest statutes with almost identical language. In North Dakota, where the automobile guest statute has been declared unconstitutional but is worded differently than the airplane guest statute, the airplane guest statute may also come under attack.

The only logical reason visible to this Court for the enactment of the Aircraft Guest Statute was a desire by the 1953 Legislature to achieve symmetry between automobile and aircraft legislation. Whatever symmetry of legislation might have been attained 31 years ago, the Aircraft

Guest Statute, like its sister the Automobile Guest Statute, does not operate uniformly upon all persons and lacks a rational relationship to its intended objectives. As such, it violates Utah Const. art. I, § 24.

The judgment below is reversed and the case is remanded for further proceedings. Costs are awarded to appellant.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

OAKS, J., having resigned, does not participate herein.